IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIANO TANCREDI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY** | : | **NO. 21-4434** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                     **March 9, 2023**

In this age discrimination case, the plaintiff Mariano Tancredi complains that his employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), did not select him for the position of Project Designer/Project Engineer that went to a younger applicant because of his age. SEPTA has moved for summary judgment, arguing that the undisputed facts establish that the applicant chosen for the position was better qualified than Tancredi and age was not a factor in the decision. Because Tancredi concedes that the decision makers were not motivated by age bias, we shall grant summary judgment in favor of SEPTA.

## Background

Tancredi, who was born in 1968,[1] graduated from college with a degree in electrical engineering technology in 1993.[2] He began his career at SEPTA as a 2nd Class

---

[1] Charge of Discrimination at 1, ECF No. 26-2 at 2–5 (attached as Ex. A to Def. SEPTA's Mot. for Summ. J., ECF No. 26 ["Mot. for Summ. J."]).

[2] Deposition of Mariano Tancredi 21:21–24, ECF No. 26-2 at 102–26 ["Tancredi Dep."] (attached as Ex. N to Mot. for Summ. J.).

Electrician on September 11, 2006.[3]  He was later promoted to 1st Class Electrician in 2017 or 2018.[4]

On August 5, 2019, Tancredi applied for a position as a Project Designer or Project Engineer in Quality Assurance.[5]  Qualifications called for a high school diploma and eleven years of appropriate experience in railway or transit maintenance and manufacturing or meaningful construction experience.[6]  An equivalent combination of education and experience also qualified.[7]

Tancredi was one of four candidates selected from the applicant pool to interview for the position.[8]  The other candidates were Kristopher Hodge, Thomas Redding, and Richard Moore.[9]  Interviews of all four candidates were conducted by the same three-member panel.[10]  The panel asked each interviewee the same five questions.[11]  Each panelist independently scored each candidate's answers based on the quality of the answers.

---

[3] Statement of Material Facts ¶ 2, ECF No. 26-1 ["SMF"].

[4] Tancredi Dep. 11:8–11.

[5] SMF ¶¶ 8–9.

[6] Project Designer/Project Engineer Job Posting at 3, ECF No. 26-2 at 61–63 (attached as Ex. H to Mot. for Summ. J.).

[7] Id.

[8] SMF ¶ 10.

[9] SEPTA Consensus Panel Ranking (Oct. 9, 2019), ECF No. 26-2 at 88 (attached as Ex. K to Mot. for Summ. J.).

[10] SMF ¶ 12; Interview Guide for Project Designer (Oct. 9, 2019) at 1, 7, 13, ECF No. 26-2 at 65–82 (attached as Ex. I to Mot. for Summ. J.).

[11] SMF ¶ 13.

In the Consensus Panel Ranking, Hodge ranked first and Tancredi ranked second.[12]  Hodge was hired for the position.[13]

On November 26, 2019, SEPTA notified Tancredi that another candidate had been selected for the position.[14]  He was advised that based on his performance during the interview, he remained eligible for one year to fill the position in the event it opened.[15]

On December 12, 2019, Tancredi contacted Carol O'Neal, SEPTA's Affirmative Action Officer, requesting an explanation of SEPTA's decision.[16]  Four days later, O'Neal and Senior Recruiter Faith Frisbie met with Tancredi to discuss his concerns.[17]  They discussed his interview performance, explaining his scores and areas for improvement. They added that he had performed well enough to remain eligible for a year to fill the position if it became available.[18]

Following that meeting, Tancredi filed a complaint alleging age and national origin discrimination with SEPTA's EEO Department.[19]  O'Neal conducted an internal investigation.[20]  In her detailed "Investigation Summary," she outlined her discussion with

---

[12] See SEPTA Consensus Panel Ranking.

[13] Deposition of Charles Tuzzo 91:20–23, ECF No. 26-2 at 38–54 ["Tuzzo Dep."] (attached as Ex. E to Mot. for Summ. J.).

[14] Letter from Faith Frisbie to Mariano Tancredi (Nov. 26, 2019), ECF No. 26-2 at 56 (attached as Ex. F to Mot. for Summ. J.).

[15] Id.

[16] SMF ¶ 16; SEPTA's EEO Investigation Summary at 1, ECF No. 26-2 at 33–36 (attached as Ex. D to Mot. for Summ. J.).

[17] SMF ¶ 17; SEPTA's EEO Investigation Summary at 1.

[18] SMF ¶¶ 18–19; Deposition of Carol O'Neal 62:19–22, ECF No. 26-2 at 13–31 ["O'Neal Dep"] (attached as Ex. C to Mot. for Summ. J.); SEPTA's EEO Investigation Summary at 1–2.

[19] SMF ¶ 20; Charge of Discrimination at 2.

[20] SMF ¶ 21; O'Neal Dep. 4:11–16.

Frisbie and Tancredi regarding his interview performance.[21]  She then reviewed the other positions Tancredi had applied for in the past and explained why he was not given those jobs or interviews.[22]  In connection with Tancredi's applications for other jobs, O'Neal explained:

> It should also be noted that [Tancredi] listed positions in his complaint that he applied for during 2013-2015.  Five (5) of these were entry level Engineer positions which SEPTA recruit[s] for by discipline such as: Electrical, Civil, Structural or Mechanical.
>
> As a matter of practice, SEPTA's entry level Engineer candidates are those who have recently graduated within 1-2 years of the job posting.  [Tancredi] contended that SEPTA did not provide him a promotional opportunity because of his age.  SEPTA qualification for entry level Engineer positions are not based on age, but by newly graduates of Engineering and specific discipline, no matter the age.
>
> During this same time frame [Tancredi] applied for two (2) Project Engineer positions, in 2013 and 2014 respectively.  Since the recruitment files were not available for these time periods, the results of candidacy could not be determined.[23]

She concluded:

> At the conclusion of my investigation, on February 28, 2020, I contacted [Tancredi] by phone.  I advised him that his age or his ethnicity, Hispanic[,] was not a factor/decision used in the promotional process for the positions he applied for over the past three (3) years.  I advised him that the promotional process is very competitive and generally there is only one (1) available position.  I also informed him that SEPTA grants interview[s] to those who meet the qualifications of the position and that he was granted an interview for 2 of 4 positions he applied for over the past three (3) years.
>
> I also explained to him SEPTA's practice for recruiting entry level Engineer candidates, as described above.

---

[21] SEPTA's EEO Investigation Summary at 1–2.

[22] *Id.* at 2–3.

[23] *Id.* at 3.

> Lastly, I further emphasized to him that the Project Designer/Project Engineers Q. A. position he interviewed for was well documented and his race or age was not a factor.
>
> At the close of the conversation, [Tancredi] stated that the investigation was not good enough and he feels that SEPTA should provide him with information about the person who received the promotion. He repeatedly stated that he did not receive promotions because he's Hispanic.
>
> At that point, I informed [Tancredi] that I completed my investigation and I was going to close his complaint. [Tancredi] abruptly stated since SEPTA would not help him he was going to file a complaint with the EEOC and hung up the phone.[24]

On February 28, 2020, O'Neal discussed her findings with Tancredi.[25] Dissatisfied with her explanation, Tancredi filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 6, 2020, alleging age and national origin discrimination.[26] On July 6, 2021, the EEOC issued a Dismissal Notice of Right to Sue Letter.[27] Tancredi filed his *pro se* complaint in this court on October 6, 2021, alleging age, race, and national origin discrimination and retaliation claims.[28]

---

[24] *Id.*

[25] SMF ¶ 22; Charge of Discrimination at 2.

[26] Charge of Discrimination at 1–2.

[27] U.S. Equal Employment Opportunity Commission Dismissal and Notice of Rights at 1, ECF No. 26-2 at 58–59 (attached as Ex. G to Mot. for Summ. J.). According to the letter:

> THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON: . . . The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

*Id.*

[28] *See* Compl., ECF No. 1.

SEPTA filed a motion to dismiss, arguing that Tancredi's claims were time-barred because he filed his complaint two days after the 90-day deadline to file a complaint after receiving the Notice of Right to Sue Letter.[29] It also contended that Tancredi's race-based discrimination and retaliation claims should be dismissed for failure to exhaust administrative remedies, and that he failed to plead facts sufficient to state claims for retaliation, race discrimination, and national origin discrimination.[30] We dismissed Tancredi's claims for retaliation under Title VII and the ADEA with prejudice, and dismissed the race and national origin discrimination claims without prejudice.[31] We also granted Tancredi leave to file an amended complaint.[32] Tancredi, represented by counsel, filed an amended complaint on May 12, 2022, dropping his race and national origin-based claims and limiting his claim to age discrimination.[33]

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir.

---

[29] Def.'s Mot. for Dismiss Pl.'s Compl. ¶ 1, ECF No. 8.

[30] *Id.* ¶¶ 2–3.

[31] Order ¶¶ 3, 6, ECF No. 14.

[32] *Id.* ¶ 7.

[33] *See* First Am. Civ. Compl., ECF No. 18.

2003).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).  Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment.  *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

When the non-movant does not respond to the motion for summary judgment or present contravening facts, we may consider the facts as undisputed for purposes of the motion.  Nonetheless, we still must conduct an independent analysis to determine whether the movant is entitled to summary judgment.  *See* Fed. R. Civ. P. 56(e)(2)–(3) advisory committee's note to 2010 amendment (recognizing that "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"); E.D. Pa. Local R. Civ. P. 7.1(c).  The court must ensure that "the motion and supporting materials . . . show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  In short, even in the absence of opposition, summary judgment may be granted only if the moving party demonstrates that the movant is entitled to judgment as a matter of law.

Tancredi did not respond to SEPTA's Statement of Material Facts.  He filed his own short Statement of Material Facts that did not contradict SEPTA's facts.  The

7

scheduling order clearly advised the parties that "[a]ll material facts set forth in the Statement of Undisputed Facts served by the movant shall be deemed undisputed unless specifically controverted by the opposing party."[34] Tancredi did not controvert SEPTA's stated facts. Thus, our task is to determine whether, given these undisputed facts which are supported by the record, SEPTA is entitled to judgment as a matter of law.

## Analysis[35]

Because Tancredi is proceeding under a pretext theory and does not present any "direct evidence" of discrimination, his claims are governed by the burden-shifting *McDonnell Douglas* analysis. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095 n.4 (3d Cir.1995) (citations omitted). Under the burden-shifting *McDonnell Douglas* analysis, Tancredi must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). Establishing a *prima facie* case of discrimination "'is not onerous' and poses 'a burden easily met.'" *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The determination of whether a *prima facie* case has been established is, under most circumstances, a question of law for the court. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

---

[34] Scheduling Order ¶ 5(c), ECF No. 25.

[35] Relying on the same facts forming the basis for his ADEA claim, Tancredi also alleges violations of the PHRA. The ADEA and PHRA are coextensive. Therefore, our analysis of Tancredi's ADEA claim applies equally to his PHRA cause of action. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted); *Slagle v. County of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (citations omitted).

If he succeeds in establishing a *prima facie* case, the burden shifts to SEPTA to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Willis v. UPMC Child.'s Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir. 1999)).  SEPTA's burden is "relatively light." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citations omitted).  It can satisfy its burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted). SEPTA's burden is one of production, not persuasion.  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citation omitted).  It "need not prove that the tendered reason *actually* motivated" its decision.  *Fuentes*, 32 F.3d at 763 (emphasis in original) (citation omitted).  It need only show that the decision could have been motivated by the proffered legitimate, nondiscriminatory reason.  *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999) (citation omitted).

If SEPTA satisfies its burden, the burden shifts back to Tancredi to discredit SEPTA's proffered justification or present evidence that he was replaced and terminated for a discriminatory reason.  *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 324 (3d Cir. 2014) (citations omitted).  Tancredi must produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination.  *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d at 426–27).  He may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's

9

actions could not have been for nondiscriminatory reasons." *Id.* at 644–45 (quoting *Fuentes*, 32 F.3d at 765). He can meet his burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination. *Id.* at 645 (citing *Fuentes*, 32 F.3d at 764). Examples of such evidence include previous acts of discrimination against him, discrimination against other persons within his protected class or within another protected class, or a showing that SEPTA has treated similarly situated non-members of the protected class more favorably. *Id.* (citation omitted).

In other words, Tancredi must proffer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644–45 (citations omitted). The final burden of production "merges with the ultimate burden of persuading [the jury] that []he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

To establish a *prima facie* case of age discrimination, Tancredi must show: (1) he is at least 40 years old; (2) he suffered an adverse employment decision; (3) he was qualified for the position; and (4) a sufficiently younger employee was appointed to the position. *Willis*, 808 F.3d at 644 (citation omitted).

Tancredi has made out a *prima facie* case of age discrimination. He was 51 years old when he was not selected for the position. As the results of the interview process show, he was qualified for the position. A younger candidate was selected for the

10

position. Hence, the burden shifts to SEPTA to present a legitimate nondiscriminatory reason for failing to award the job to Tancredi.

SEPTA contends that Tancredi was not selected because he scored lower than the candidate selected for the position. The candidate who scored the highest, Hodge, was selected.

The interviews were conducted by a three-member panel, consisting of Charles Tuzzo, John Yum, and Daniel Jones. All four candidates were asked the same five questions. Each panelist ranked the candidates' answers on a numerical scale of one to twenty. All panelists ranked Hodge ahead of Tancredi in all categories. The scores for each of the top two candidates are as follows:

|       | Tuzzo    |       | Yum      |       | Jones    |       |
|-------|----------|-------|----------|-------|----------|-------|
|       | *Tancredi* | *Hodge* | *Tancredi* | *Hodge* | *Tancredi* | *Hodge* |
| Q-1   | 14       | 15    | 12       | 13    | 12       | 15    |
| Q-2   | 15       | 16    | 13       | 16    | 15       | 16    |
| Q-3   | 13       | 14    | 14       | 15    | 13       | 17    |
| Q-4   | 10       | 11    | 11       | 13    | 10       | 13    |
| Q-5   | 14       | 14    | 12       | 12    | 10       | 13    |
| Total | 66       | 70    | 62       | 69    | 60       | 74    |

In the Consensus Panel Ranking, Hodge, the youngest candidate, ranked first and Tancredi, the oldest candidate, ranked second. Consistent with SEPTA's policy, Hodge was offered the Project Designer/Project Engineer position because he was ranked first in the interview process. As O'Neal explained the process:

> Q: So this interview process alone was the only determining factor as to why Mr. Hodge got the job over the other three individuals?
>
> A: Yes.
>
> Q: Even though Mr. Tancredi had 13 years of experience at SEPTA?

11

> A: Yes. That part doesn't matter. The only part that matters is if you meet the qualifications. After that everything is even.
>
> If you meet the qualifications you go to the interview. Whoever shows out at the interview gets the job. Whoever performs the best at the interview is the person awarded the position.[36]

Likewise, Tuzzo testified:

> Q: At the bottom of the document it says acceptable one, two, three, not four.
>
> What does that mean?
>
> A: So, that means in the final rank, candidate number one, who we made the offer, in the event that candidate number one turns the offer down or does not take the offer, then candidate number two would be able to be given the offer.
>
> If the offer was turned down by candidate number two or unavailable to candidate number two, then candidate number three would be made an offer.
>
> If the third candidate then turned [down] the offer, we would then have to go back out and re-solicit the job. We would not be extending an offer to candidate four.
>
> . . . .
>
> A: . . . If the number one candidate for whatever reason decided to leave within the first year, the first 365 days, I would then be able to select the second candidate to come in and take that position.[37]

SEPTA has shown a legitimate, non-discriminatory reason for why Tancredi did not get the job. The burden shifts back to Tancredi to introduce evidence of pretext. He has not done so.

---

[36] O'Neal Dep. 55:3–16.

[37] Tuzzo Dep. 49:3–50:5.

In effect, the panelists were the decision makers. Whomever they ranked first was offered the position. No one else in SEPTA had input in the selection process. Tuzzo confirmed that the selection decision was based on the panel's scoring:

> Q: Let me get to the heart of the matter.
>
> My question is, were the interview questions and answers the only factor in Mr. Tancredi not getting the job?
>
> A: Yes. They were the only factor in Mr. Tancredi not getting the job.
>
> Q: And who made the ultimate decision to hire Mr. Hodge and not Mr. Tancredi?
>
> A: The ultimate decision was based on the scoring itself of the three panelists.
>
> Q: Who was the person then that made the decision to hire Mr. Hodge and offer him that position?
>
> MR. KENNEDY: Objection.
>
> THE WITNESS: It wasn't a person, it was a panel. So – so there is no answer.
>
> BY MR. WEINBERG:
>
> Q: Well, there has to be an answer. There were three panel members; were there not?
>
> A: Yes.
>
> Q: So Mr. Yum, Mr. Jones, and Mr. Tuzzo decided to hire Mr. Hodge over Mr. Tancredi based upon the scoring system. Can we agree?
>
> A: Yes.[38]

---

[38] *Id.* 90:22–91:23.

Tancredi does not accuse the panelists of age bias. On the contrary, he testified at his deposition that he did not believe that either Tuzzo, Yum or Jones decided not to award him the position based on his age. He candidly testified:

> Q: Mr. Tancredi, I was looking back at my notes, and when we lost connection a little while ago, I had asked you, "Did any of the panel members, so Mr. Tuzzo, Mr. Yum, or Mr. Jones, say or do anything that made you believe that they were making a decision based on your age?" And I think we got cut off at that point. So I want to ask you that question again.
>
> A: **No**, but the lack of the other two interviewers writing down what I said would make me believe that they already know who they wanted.[39]

Tancredi speculated that "the lack of the other two interviewers writing down what [he] said" made him "believe that they already kn[e]w who they wanted."[40] The interviewer's notes were preserved in the Interview Guide. They show that contrary to Tancredi's perception, all panelists made notes.[41] In any event, though he questions the absence of note taking, he does not attribute the ranking of Hodge higher to age bias. Indeed, he admitted that the lack of note taking "had nothing to do with his age."[42]

## Conclusion

Tancredi does not accuse the decision makers of age-based discrimination in the selection process. He concedes they did not make the decision to award the position to a younger applicant based upon age. Therefore, because Tancredi has not shown any evidence of age bias, SEPTA is entitled to judgment as a matter of law.

---

[39] Tancredi Dep. 78:20–79:4 (emphasis added).

[40] *Id.* 79:2–4.

[41] *See* Interview Guide for Project Designer at 7–18.

[42] SMF ¶ 51.